**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.  <u>1:23-cv-1710</u>

JOHN HICKEY,

      Plaintiff,

v.

PDC ENERGY, INC.,
BARTON R. BROOKMAN, JR.,
PAMELA R. BUTCHER,
MARK E. ELLIS,
PAUL J. KORUS,
LYNN A. PETERSON,
CARLOS A. SABATER,
AND DIANA L. SANDS,

      Defendants.

---

**COMPLAINT AND JURY DEMAND**
**FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**

---

Plaintiff, John Hickey ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.       Plaintiff brings this stockholder action against PDC Energy, Inc. ("PDCE" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Chevron Corporation ("Parent") through merger vehicle Bronco Merger Sub, Inc. ("Merger Sub" and collectively with Parent, "Chevron") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all stock transaction (the "Proposed Transaction").

2.       The terms of the Proposed Transaction were memorialized in a May 22, 2023 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of PDCE's common stock will be converted into the right to receive 0.4638 of a share of common stock of Parent. The Proposed Transaction will result in former PDCE stockholders holding approximately 2% of the outstanding fully diluted Chevron common stock.

3.       Thereafter, Chevron filed a Form S4 attaching the Registration Statement on June 20, 2023, which was thereafter amended on Form S4/A on June 28, 2023 and on July 5, 2023, (collectively, the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, the Registration Statement fails to disclose why no collar mechanism was put in place to keep the merger consideration within a range of reasonableness should Chevron stock price fluctuate prior to the consummation of the Proposed Transaction.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Registration Statement, preventing Plaintiff from making a fully informed decision on whether to vote in favor of the proposed transaction.  The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for PDCE and Chevron, provided by PDCE and Chevron management to the Board and the Board's financial advisor J.P. Morgan Securities LLC ("J.P. Morgan") and Parent's financial advisor Morgan Stanley & Co. LLC ("Morgan Stanley")  (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created J.P. Morgan, if any, and provide to the Company and the Board.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.     Plaintiff is a citizen of Idaho and, at all times relevant hereto, has been a PDCE stockholder.

8.     Defendant PDCE, an independent exploration and production company, acquires, explores for, develops, and produces crude oil, natural gas, and natural gas liquids in the United States.  PDCE is incorporated in Delaware and has its principal place of business at 1099 18th Street, Suite 1500, Denver, CO, 80202.  Shares of PDCE common stock are traded on the Nasdaq Stock Exchange under the symbol "PDCE".

9.     Defendant Barton R. Brookman, Jr. ("Brookman") has been a director of the Company at all relevant times.  In addition, Brookman serves as the Company's President and Chief Executive Officer ("CEO").

10.     Defendant Pamela R. Butcher ("Butcher") has been a director of the Company at all relevant times.

11.     Defendant Mark E. Ellis ("Ellis") has been a director of the Company at all relevant times. In addition, Ellis serves as the Non-Executive Chairman of the Board of Directors.

12.     Defendant Paul J. Korus ("Korus") has been a director of the Company at all relevant times.

13.     Defendant Lynn A. Peterson ("Peterson") has been a director of the Company at all relevant times.

14.     Defendant Carlos A. Sabater ("Sabater") has been a director of the Company at all relevant times.

15.     Defendant Diana L. Sands ("Sands") has been a director of the Company at all relevant times.

16.     Defendants identified in ¶¶ 9 - 15 are collectively referred to as the "Individual Defendants."

17.     Non-Party Chevron Corporation, through its subsidiaries, engages in integrated energy and chemicals operations in the United States and internationally.

18.     Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

20.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its Principal Offices in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

22.     PDC Energy, Inc. is a domestic independent exploration and production company that acquires, explores, and develops properties for the production of crude oil, natural gas and NGLs, with operations in the Wattenberg Field in Colorado and Delaware Basin in west Texas. Its operations in the Wattenberg Field are focused in the horizontal Niobrara and Codell plays and its Delaware Basin operations are primarily focused in the horizontal Wolfcamp zones. PDCE was founded in 1969 and has its principal place of business in Denver, Colorado.

23.     The Company's February 22, 2023 performance press release, revealing performance results from the year preceding the announcement of the Proposed Transaction, indicated impressive success.  For example, the Company highlighted that it had:

    a.   Total production of 85.0 MMBoe or approximately 233,000 Boe per day and oil production of 27.5 MMBbls or approximately 75,000 Bbls per day;

    b.   Net cash from operating activities of approximately $2.8 billion, adjusted cash flows from operations, a non-U.S. GAAP metric defined below, of approximately $2.5 billion and oil and gas capital investments of approximately $1.1 billion;

    c.   Approximately $1.4 billion of adjusted free cash flow ("FCF"), a non-U.S. GAAP metric defined below;

    d.   Returned approximately $1.0 billion of capital to shareholders through the repurchase of approximately 12.1 million shares, or approximately 12 percent of weighted common stock outstanding, and $1.95 in base and special dividends; and

     e.   Estimated SEC proved reserves as of year-end 2022 were approximately 1,100 MBoe with a standardized measure value of its proved reserves of $15.0 billion and a discounted pre-tax PV-10 value of $19.1 billion.

24.    Speaking on the positive results, President and Chief Executive Officer, Brookman, commented, "Execution in 2022 helped expand the foundation of PDC's continued long-term success in creating value for its shareholders. The Great Western transaction early in the year increased our inventory of top tier opportunities in the core Wattenberg Field. Last year we also gained confidence in the long-term development of our drilling programs with the COGCC's unanimous approval of the Guanella CAP. PDC achieved these major 2022 milestones while simultaneously returning $1 billion of free cash flow to shareholders. We exited the year with approximately 1.1 billion barrels equivalent of proved reserves, a rock-solid balance sheet and a durable inventory of projects capable of driving a sustainable production growth profile for years to come."

25.    Brookman continued, "Finally, I want to recognize the work our PDC team has done on the environmental front. These efforts have resulted in year-over-year GHG intensity and methane emission reductions greater than 30 percent and 50 percent respectively, far surpassing our 15 percent and 30 percent targets. I am also proud to report that the 2022 methane emission numbers effectively met our 2025 methane emission target three years ahead of schedule. Expect a reassessment of our 2025 and 2030 emissions goals in the near future which will align with this 2022 outperformance. Through all these efforts, PDC is positioned to contribute some of the lowest emissions production in the world."

26.     The sustained clinical success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by PDCE.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

27.     Despite this upward trajectory, the Individual Defendants have caused PDCE to enter into the Proposed Transaction without providing requisite information to PDCE stockholders such as Plaintiff.

***The Flawed Sales Process***

28.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

29.     Significantly, the Registration Statement fails to disclose why no collar mechanism was put in place to keep the merger consideration within a range of reasonableness should Chevron stock price fluctuate prior to the consummation of the Proposed Transaction.

30.     The Registration Statement fails to disclose whether a committee of disinterested directors was formed to review the Proposed Transaction and if so, the identity of the directors who sat on said committee and what powers the committee had to evaluate the transaction, including whether the committee was empowered to veto a potential transaction not in the best interests of shareholders. On the other hand, if a committee was not formed, the Registration Statement fails to adequately disclose why a committee of disinterested directors was not formed.

31.     Additionally, the Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Chevron, whether this agreement differed from any other agreement with potentially interested third parties not specifically

mentioned by the Registration Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

32.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

33.     On May 22, 2023, Chevron and PDCE issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **SAN RAMON, Calif. and DENVER, Colo., May 22, 2023** — Chevron Corporation (NYSE: CVX) announced today that it has entered into a definitive agreement with PDC Energy, Inc. (NASDAQ: PDCE) to acquire all of the outstanding shares of PDC in an all-stock transaction valued at $6.3 billion, or $72 per share. Based on Chevron's closing price on May 19, 2023 and under the terms of the agreement, PDC shareholders will receive 0.4638 shares of Chevron for each PDC share. The total enterprise value, including debt, of the transaction is $7.6 billion.
>
> The acquisition of PDC provides Chevron with high-quality assets expected to deliver higher returns in lower carbon intensity basins in the United States. PDC brings strong free cash flow, low breakeven production and development opportunities adjacent to Chevron's position in the Denver-Julesburg (DJ) Basin, as well as additional acreage to Chevron's leading position in the Permian Basin.
>
> "PDC's attractive and complementary assets strengthen Chevron's position in key U.S. production basins," said Chevron Chairman and CEO Mike Wirth. "This transaction is accretive to all important financial measures and enhances Chevron's objective to safely deliver higher returns and lower carbon. We look forward to welcoming PDC's team and shareholders to Chevron and continuing both companies' focus on safe and reliable operations."
>
> "The combination with Chevron is a great opportunity for PDC to maximize value for our shareholders. It provides a global portfolio of best-in-class assets," said Bart Brookman, PDC President and CEO. "I look forward to blending our highly complementary organizations, and I'm excited that PDC's assets will help propel Chevron toward our shared goal for a lower carbon energy future."

***Potential Conflicts of Interest***

34.     The breakdown of the benefits of the deal indicates that PDCE insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of PDCE.

35.     Company insiders currently own large, illiquid portions of Company stock which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. While the Registration Statement provides the following information, it fails to provide an accounting of the amount of consideration they will be exchanged for upon the consummation of the Proposed Transaction.

| | PDC Common Stock Beneficially Owned(1) | | |
|---|---|---|---|
| | Number of Shares | Shares Underlying Stock Appreciation Rights(2) | Total | Percent of Class(3) |
| Barton R. Brookman, Jr. (4) | 471,582 | 79,565 | 551,147 | * |
| Lance A. Lauck (5) | 164,120 | 20,044 | 184,164 | * |
| David J. Lillo (6) | 36,396 | — | 36,396 | * |
| R. Scott Meyers (7) | 119,676 | — | 119,676 | * |
| Nicole L. Martinet (8) | 57,755 | — | 57,755 | * |
| Pamela R. Butcher (9) | 4,787 | — | 4,787 | * |
| Mark E. Ellis (10) | 46,529 | — | 46,529 | * |
| Paul J. Korus (9) | 28,460 | — | 28,460 | * |
| Lynn A. Peterson (9) | 226,167 | — | 226,167 | * |
| Diana L. Sands (9) | 9,055 | — | 9,055 | * |
| Carlos A. Sabater (9) | 7,126 | — | 7,126 | * |
| **All directors and executive officers as a group (12 persons) (11)** | **1,176,510** | **99,609** | **1,276,119** | **1.5%** |

36.     Additionally, Company insiders currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff

and other public stockholders of the Company. Despite this, the Registration Statement fails to provide an accounting of these amounts.

37.     Moreover, employment agreements with certain PDCE executives may entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are typically significant, and each director or officer may be entitled to millions of dollars, compensation not shared by Plaintiff, as follows.

| Named Executive Officer | Cash ($)(1) | Equity Awards ($)(2) | Benefits ($)(3) | Total ($) |
|---|---|---|---|---|
| Barton R. Brookman | $ 6,637,500 | $ 39,419,150 | $ 50,319 | $ 46,106,969 |
| R. Scott Meyers | $ 2,728,500 | $ 14,440,053 | $ 87,723 | $ 17,256,276 |
| Lance A. Lauck | $ 3,604,350 | $ 13,852,748 | $ 56,101 | $ 17,513,199 |
| Nicole L. Martinet | $ 2,278,500 | $ 9,611,428 | $ 87,723 | $ 11,977,651 |
| David J. Lillo | $ 2,205,000 | $ 8,993,111 | $ 87,723 | $ 11,285,834 |

38.     The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

39.     Thus, while the Proposed Transaction is not in the best interests of PDCE, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

40.     On June 20 2023 (as amended on June 29, 2023 and July 5, 2023), the PDCE Board caused to be filed with the SEC a materially misleading and incomplete Registration Statement

that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

41.    Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

a.  Whether a committee of independent directors was created to run the sales process, and if so, the composition and powers of that committee. If no such committee was created, the Registration Statement fails to provide adequate explanation behind such a decision;

b.  Why no collar mechanism was put in place to keep the merger consideration within a range of reasonableness;

c.  Whether the confidentiality agreements entered into by the Company with Chevron differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

d.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Chevron, would fall away;

e. Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning PDCE's and Chevron's Financial Projections*

42. The Registration Statement fails to provide material information concerning financial projections for PDCE provided by PDCE management to the Board and J.P. Morgan and relied upon by J.P. Morgan in its analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

43. Notably the Registration Statement reveals that as part of its analyses, J.P. Morgan reviewed "certain internal financial analyses and forecasts prepared by the management of the Company [PDCE] relating to its business."

44. The Registration Statement should have, but fails to provide, certain information in the projections that PDCE management provided to the Board and J.P. Morgan. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007)

45. With regard to *PDC Unaudited Prospective Financial Information,* prepared by PDCE, for each of the *Strip Case*, *Consensus Case*, *Management Outlook + LT $55 Flat Case*, and *Management Outlook + LT $70 Flat Case*, the Registration Statement fails to disclose material line items, including the following:

a. EBITDAX, as well as any underlying inputs, metrics, and assumptions

necessary to calculate this metric, including specifically: earnings, interest, taxes, depreciation, amortization and exploration expenses.

46.     The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

47.     The Registration Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various sets of projections rely.

48.     The Registration Statement also fails to disclose any material projection data for Chevron, preventing plaintiff from being fully informed as to the extent to which his interest is being diluted.

49.     This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

50.     Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the value of the merger consideration, the accuracy of the J.P. Morgan's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by J.P. Morgan*

51.     In the Registration Statement, J. P. Morgan describes its opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying

assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

52.     With respect the *Selected Public Trading Multiples*, the Registration Statement fails to disclose:

    a.  The specific metrics observed for each comparable company;

    b.

    c.  The inputs, metrics and assumptions used to determine the reference ranges of 2.50x – 3.50x and 2.25x – 3.25x for firm value to estimated 2023 and 2024 EBITDAX, respectively; and

    d.  The inputs, metrics and assumptions used to determine the reference ranges of 1.75x – 3.75x and 1.50x – 3.50x for equity value to estimated 2023 and 2024 operating cash flow, respectively.

53.     With respect the *Selected Transaction Multiples Analysis*, the Registration Statement fails to disclose:

    a.  The specific metrics observed for each of the selected transactions;

    b.  The date on which each of the selected transactions was announced;

    c.  The date on which each of the selected transactions closed;

    d.  The aggregate value of each of the selected transactions; and

    e.  The inputs, metrics, and assumptions used to determine the multiple reference range for firm value to NTM EBITDAX of 2.50x – 4.50x.

54.     With respect the *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose:

    a.  The Unlevered Free Cash Flows that PDC was forecasted to generate during

fiscal years 2023 through 2031, as well as the specific inputs, metrics, and assumptions used to determine the same;

b.  The inputs, metrics, and assumptions used to determine the terminal EBITDAX multiple range of 2.00x to 3.00x used to calculate the range of terminal asset values; and

c.  The inputs, metrics, and assumptions used to determine the range of discount rates from 10.25% to 11.25%; and

d.  PDCE's weighted average cost of capital utilized, and the specific inputs, metrics, and assumptions used to determine the same.

55.  With respect the *Analyst Price Target*, the Registration Statement fails to disclose:

a.  The specific price targets utilized; and

b.  The identity of the firms which generated the utilized price targets.

56.  These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

57.  Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public PDCE stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

58.     Plaintiff repeats all previous allegations as if set forth in full herein.

59.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

60.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

61.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement

in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

62.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

63.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

64.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

65.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

66.     Plaintiff repeats all previous allegations as if set forth in full herein.

67.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and

Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

68.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

69.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of PDCE's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

70.    The Individual Defendants acted as controlling persons of PDCE within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the

Individual Defendants had the power and authority to cause PDCE to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled PDCE and all of its employees.  As alleged above, PDCE is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: July 5, 2023                          **BRODSKY & SMITH, LLC**

                               By:        */s/ Marc L. Ackerman*
                                          Marc L. Ackerman
                                          Two Bala Plaza, Suite 805
                                          Bala Cynwyd, PA 19004
                                          Phone: (610) 667-6200
                                          Fax:    (610) 667-9029
                                          Email:  mackerman@brodskysmith.com

                                          *Counsel for Plaintiff*